## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## FORT LAUDERDALE DIVISION

| | | |
|---|---|---|
| DTV AMERICA CORPORATION and HC2 BROADCASTING INC. (f/k/a DTV HOLDINGS INC.), | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | Civil Action No. |
| JOHN N. KYLE II; KING FORWARD, INC.; KING SPECTRUM, L.L.C. f/k/a DTV AMERICA I, LLC; TIGER EYE BROADCASTING CORPORATION; TIGER EYE LICENSING, L.L.C.; KRISTINA C. BRUNI; and BELLA SPECTRA CORPORATION, | ) ) ) ) ) ) ) ) | COMPLAINT AND REQUEST FOR INJUNCTIVE RELIEF JURY TRIAL DEMANDED |
| Defendants. | ) ) ) | |

Plaintiffs DTV America Corporation ("DTV") and HC2 Broadcasting Inc., which was formerly known as DTV Holding Inc. ("HC2" and, collectively with DTV, "Plaintiffs"), by their undersigned attorneys, as and for their complaint against Defendants John N. Kyle II ("Kyle"), King Forward, Inc. ("King Forward"), King Spectrum, L.L.C. ("King Spectrum"), which was formerly known as DTV America I, LLC ("DTV I"), Tiger Eye Broadcasting Corporation ("Tiger Eye" and, collectively with Kyle, King Forward, and King Spectrum, the "Kyle Defendants"), Tiger Eye Licensing, L.L.C. ("Tiger Eye Licensing"), Kristina C. Bruni ("Bruni"), and Bella Spectra Corporation ("Bella Spectra" and, collectively with Bruni, the "Bruni Defendants"), allege as follows:

## <u>NATURE OF THIS ACTION</u>

1.     This is an action for preliminary and permanent injunctive relief, declaratory relief, fraud in the inducement, bad faith, unjust enrichment, and breach of contract.

2.     This action arises out of Defendants' multiple intentional and egregious breaches of (i) a November 9, 2017 Non-Competition, Non-Solicitation and Non-Disparagement Agreement entered into by and between Plaintiff DTV, Defendant Kyle, and Kyle's company, Defendant King Forward (the "Kyle Non-Compete Agreement"), attached as Exhibit 1, in connection with the purchase of certain securities and assets from Defendants and their affiliates, Kyle and King Forward's provision of consulting services to DTV, and the award of certain restricted stock units to King Forward; and (ii) a substantially identical November 9, 2017 Non-Competition, Non-Solicitation and Non-Disparagement Agreement between DTV and the Bruni Defendants (the "Bruni Non-Compete Agreement" and, collectively with the Kyle Non-Compete Agreement, the "Non-Compete Agreements"), attached as Exhibit 2.

3.     Defendants' actions also breached their obligations under (i) a November 9, 2017 Consulting Agreement between DTV and King Forward (the "Kyle Consulting Agreement"), attached as Exhibit 3, and (ii) a substantially similar November 9, 2017 Consulting Agreement between DTV and Bella Spectra (the "Bruni Consulting Agreement" and, collectively with the Kyle Consulting Agreement, the "Consulting Agreements"), attached as Exhibit 4. Under the Consulting Agreements, Defendants Bruni and Kyle and their respective companies were obligated to perform services solely and exclusively for the benefit of DTV, and "shall not perform services for any other person or entity", including themselves or their affiliates.

4.     Defendants breached the Non-Compete Agreements and Consulting Agreements, without limitation and for example, by:

a.  failing to abide by their obligations of diligence, loyalty, and exclusivity under the Consulting Agreements by pursuing and engaging in self-interested transactions, continuing to own and remain involved with competing entities, and destroying records relating to Defendants' conduct.

b.  procuring approval from the Federal Communications Commission ("FCC") for a construction permit allowing the construction of a new television station with a broadcast coverage area, or "contour," almost entirely within the broadcast contour of an existing television station construction permit held by Plaintiffs;

c.  reinstating the corporate existence of DTV I, a corporate entity owned and controlled by Kyle and/or King Forward that had been defunct for several years, and renaming it King Spectrum;

d.  causing King Forward, King Spectrum, and Tiger Eye, another corporate entity owned and controlled by Kyle and/or King Forward, to file with the FCC amendments to several pending applications for additional television station construction permits, requesting updated channel assignments for those new television stations; and

e.  procuring approval from the FCC for several of those amended applications for construction permits, allowing the construction of new television stations with broadcast contours substantially overlapping with the broadcast contours of Plaintiffs' existing holdings, including one such permit for a new station in Florida granted by the FCC just yesterday.

5.  Defendants' breaches of the Non-Compete Agreements and Consulting Agreements damaged and, if not enjoined, will continue to further damage Plaintiffs' business imminently and irreparably by competing directly with Plaintiffs "in the business of owning and

acquiring low power television (LPTV) broadcast licenses and construction permits (CPs) across the US", "own[ing] and operat[ing] LPTV stations", and "launch[ing] . . . LPTV stations in the US"—conduct expressly proscribed by the Non-Compete Agreements during the "forty-eight month[]" term and within the geographic scope of the Non-Compete Agreements.

6.      Defendants' breaches of the Non-Compete Agreements require Plaintiffs to request preliminary and permanent injunctive relief to protect Plaintiffs' legitimate business interests secured by the Non-Compete Agreements.

7.      If Defendants' actions are not enjoined, Plaintiffs are entitled to recover damages from Defendants, including lost profits and other losses, expenditures, and costs incurred by Plaintiffs as a result of those actions.

8.      Plaintiff HC2 and Defendants King Forward, Tiger Eye, Tiger Eye Licensing, and Bella Spectra entered into a Final Asset Purchase Agreement dated as of June 27, 2017 (the "APA"), attached (excluding voluminous schedules and exhibits) as Exhibit 5.

9.      HC2 also entered into a related Securities Purchase Agreement dated as of June 27, 2017 (the "SPA") with Defendants Kyle, King Forward, Tiger Eye Licensing, and the Bruni Defendants, among other non-parties to this action.

10.      The APA included as closing conditions the execution and delivery by Defendants of the Non-Compete Agreements and the Consulting Agreements—each of which incorporated as exhibits the corresponding Non-Compete Agreement and a related Restricted Stock Unit Award Agreement (respectively the "Kyle Stock Award Agreement" and "Bruni Stock Award Agreement", and collectively the "Stock Award Agreements").

11.     On information and belief, Defendants made false representations to Plaintiffs during the negotiation of the APA, SPA, Non-Compete Agreements, Consulting Agreements, and Stock Award Agreements (collectively, the "Agreements").

12.     Based on those false representations, HC2 entered into the Agreements, which together contemplated total consideration to Defendants and their affiliates in excess of $17 million.

13.     On information and belief, to induce Plaintiffs to enter into the Agreements, Defendants intentionally deceived Plaintiffs by falsely representing to Plaintiffs that Defendants would perform consulting services diligently and exclusively for Plaintiffs, and that Defendants would not take actions to compete with Plaintiffs during the terms of the Non-Compete Agreements.

14.     Contrary to those representations, during the terms of the Non-Compete Agreements, Defendants procured multiple construction permits and pressed forward with applications for additional construction permits for new television stations with broadcast contours overlapping substantially with the contours of Plaintiffs' existing holdings.

15.     Plaintiffs would not have entered into the Agreements had they been aware that Defendants intended to violate the Consulting Agreements and Non-Compete Agreements.

16.     Defendants' fraud in the inducement damaged, and will continue to damage, Plaintiffs' business by, without limitation and for example, causing Plaintiffs to pay more consideration to Defendants and their affiliates than the assets and services purchased were worth, diminishing the value of the assets and services purchased by Plaintiffs, and causing lost profits, loss of revenue, and loss of market share due to Defendants' direct competition with Plaintiffs.

17.     On information and belief, Defendants Kyle, King Forward and the Bruni Defendants entered into the Non-Compete Agreements with the intention of using confidential information about Plaintiffs' business gained from their sale of assets to HC2 and consulting arrangement with DTV to compete directly and/or indirectly with Plaintiffs.

18.     Plaintiffs would not have agreed to share confidential information about their business with Defendants if Plaintiffs had been aware that Kyle, King Forward, and the Bruni Defendants entered into the Non-Compete Agreements with the improper purpose of using confidential information about Plaintiffs' business and competing with Plaintiffs during the terms of the Non-Compete Agreements.

19.     On information and belief, the Kyle Defendants, Tiger Eye Licensing, and the Bruni Defendants entered into the APA with the intention of gaining a competitive advantage to compete directly and/or indirectly with Plaintiffs during the terms of the Non-Compete Agreements.

20.     Defendants' misconduct damaged, and will continue to damage, Plaintiffs' business by, without limitation and for example, causing Plaintiffs to pay more consideration to Defendants and their affiliates than the assets and services purchased were worth, diminishing the value of the assets and services purchased by Plaintiffs, and causing lost profits, loss of revenue, and loss of market share due to Defendants' direct competition with Plaintiffs. Such damages presently are estimated to exceed $1 million, and continue to accrue.

21.     Plaintiffs are entitled to a declaratory judgment that the Non-Compete Agreements are valid and enforceable, that Defendants breached the Non-Compete Agreements, and for the Court to determine the tolling dates of the non-competition provisions in the Non-Compete Agreements, as well as an award of attorneys' fees and costs for this action.

## JURISDICTION AND VENUE

22.     This Court has original jurisdiction over this action pursuant to 28 U.S.C. Section 1332 because there is diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00, exclusive of punitive damages, pre- and post-judgment interest, costs, disbursements and counsel fees claimed.

23.     Venue for this action is proper in this Court because the events giving rise to the claims occurred in the Southern District of Florida and the parties agreed, in Section 8 of the Non-Compete Agreements, Section 18 of the Consulting Agreements, and Section 12.5 of the APA, to the exclusive jurisdiction of the state and federal courts in Broward County, Florida.

24.     This Court has personal jurisdiction over all Defendants in this action because, as alleged below, all Defendants are domiciled in Broward County, Florida, within the geographic jurisdiction of this Court, and under Florida Statutes Section 48.193 because, *inter alia*, all Defendants operate, conduct, engage in, and/or carry on a business or business venture in the State of Florida and have an office in the State of Florida.

## PARTIES

25.     DTV is a Delaware corporation with its principal place of business at 450 Park Avenue, 30th Floor, New York, NY 10022.

26.     HC2 is a Delaware corporation with its principal place of business at 450 Park Avenue, 30th Floor, New York, NY 10022.

27.     Defendant Kyle is a citizen and domiciliary of the State of Florida with a business address of 1671 NW 144th Terrace, Suite 106, Sunrise, FL 33323.

28.     Defendant King Forward is a Florida profit corporation with its principal place of business at 1671 NW 144th Terrace, Suite 106, Sunrise, FL 33323.

29.     Defendant King Spectrum, formerly known as DTV I, is a Florida limited liability company with its principal place of business at 1671 NW 144th Terrace, Suite 106, Sunrise, FL 33323. On information and belief, King Spectrum is owned by Kyle and/or King Forward, and Kyle is the managing member and registered agent of King Spectrum.

30.     Defendant Tiger Eye is a Florida profit corporation also currently doing business under the name King Spectrum, L.L.C., with its principal place of business at 1671 NW 144th Terrace, Suite 106, Sunrise, FL 33323. On information and belief, Tiger Eye is owned by Kyle and/or King Forward, and Kyle is the president and a director of Tiger Eye.

31.     Defendant Tiger Eye Licensing is a Florida limited liability company with its principal place of business at 1671 NW 144th Terrace, Suite 106, Sunrise, FL 33323. On information and belief, Tiger Eye Licensing is owned by Kyle and/or King Forward, and Kyle is the managing member and registered agent of Tiger Eye Licensing.

32.     Defendant Bruni is a citizen and domiciliary of the State of Florida with a business address of 2045 SW 127th Avenue, Davie, Florida 33325.

33.     On information and belief, Bruni is married to Kyle.

34.     Defendant Bella Spectra is a Florida profit corporation with its principal place of business at 2045 SW 127th Avenue, Davie, Florida 33325. On information and belief, Bella Spectra is owned by Bruni, and Bruni is the president of Bella Spectra.

## FACTUAL ALLEGATIONS (¶¶ 35–71)

35.     HC2 entered into the APA for the purpose of acquiring licenses and permits to operate several television stations, along with associated pending applications for licenses and construction permits, certain assumed contracts, associated tangible and intangible assets, including the goodwill of the acquired television stations, all proprietary and technical

information relating to the business or operation of the acquired television stations, and the books and records of the acquired television stations.

36.   In connection with the APA, HC2 also entered into the SPA, pursuant to which Kyle, Bruni, King Forward, Tiger Eye Licensing, Bella Spectra, and other parties sold certain shares of common stock of Plaintiffs and where such consideration included goodwill that was dependent on certain restrictive covenants, including those contained in the Non-Compete Agreements.

37.   The APA set a purchase price of $2,672,707.00, and the SPA set a purchase price of $13,200,158.00, for a total transaction price of $15,872,865.00.

38.   As closing conditions for the APA, Kyle and King Forward entered into the Kyle Non-Compete Agreement, and King Forward concurrently entered into the Consulting Agreement with DTV, pursuant to which DTV engaged King Forward (and Kyle) on an exclusive basis for a period of 24 months—i.e., through November 2019—to assist DTV in:

> (i) identifying and helping execute strategic opportunities for [Plaintiff] in such areas as low power television acquisitions and industry consolidation in order to assist [Plaintiff] in meeting its spectrum acquisition goals, and (ii) in its advisory role, to work directly with designated . . . employees [of Plaintiff], with the highest priority of assisting in the deployment of new stations from the [Plaintiff]'s portfolio of licenses and construction permits . . . .

39.   The Kyle Consulting Agreement provided that DTV would pay King Forward $10,416.67 twice per month for a period of up to two years, totaling $500,000.16.

40.   Section 14 of the Kyle Consulting Agreement acknowledged that Kyle, King Forward, and other parties would, in the course of performing services for Plaintiffs, learn "Confidential Information" about Plaintiffs that was "not generally available to the public, and may be of value to a competitor."

41.   Section 4 of the Kyle Consulting Agreement, entitled "Exclusivity", provides that:

Consultant, in its sole and absolute discretion, has determined that to fulfill the Services as set forth herein, it will need to devote substantially all of its business efforts to performance under this Agreement. Consultant, of its own determination, ***shall not perform services for any other person or entity to appropriately fulfill its Services hereunder***. Consultant will provide up to 120 hours per month to the Company to perform the Services contemplated by this Agreement. Consultant agrees and recognizes it has chosen to provide exclusivity to the Company in performance of the Services and based on its reasonable estimation of the attention required to perform such Services. (Emphasis added.)

42.     In Section 15 of the Kyle Consulting Agreement, King Forward agreed to indemnify Plaintiffs, in pertinent part, for:

[A]ny and all . . . losses, . . . damages, [and] expenses of any kind or nature whatsoever, including attorneys' fees and costs . . . actually or allegedly, directly or indirectly, arising from or resulting from or connected with: (a) Consultant's performance or failure to honor any promises made herein, or Consultant's performance or failure to perform Services under this Agreement; [or] (b) the omission or commission of any act, lawful or unlawful, by Consultant or any agent or employee of Consultant, whether or not such act is within the scope of employment of such agents or employees . . . .

43.     Concurrently with the Non-Compete Agreement, and as expressly contemplated by the Consulting Agreement, King Forward entered into the Kyle Stock Award Agreement, pursuant to which King Forward would receive vested restricted stock units with a total value of $700,000 through November 9, 2021—i.e., through the entire four-year term of the Kyle Non-Compete Agreement.

44.     The Non-Compete Agreement provides in relevant part that:

For forty-eight months from the date of this Agreement [i.e., through November 9, 2021], each of the Restricted Parties [i.e., Kyle, King Forward, and their respective successors and assigns] shall not, directly or indirectly through another person or entity, become employed by, work for, or provide services to, or engage in (whether as a principal, agent, independent contractor, consultant, employee, employer, partner, director, member, shareholder (other than as an owner of 2% or less of the stock of a public corporation) or in any other capacity), any person or entity engaged in a business which is competitive with the Business of the Company (as defined below).

45.     The Non-Compete Agreement further provides in relevant part that:

The Parties hereby acknowledge that: (i) the Company is engaged in the business of owning and acquiring low power television (LPTV) broadcast licenses and construction permits (CPs) across the US to build a wireless distribution platform covering select DMAs [i.e., Designated Market Areas]: (ii) the Company currently owns and operates 52 LPTV stations and intends to launch more than 50 new broadcast LPTV stations in the US over the next 12 months using LPTV licenses and CPs in its portfolio; and (iii) the Company is also engaged in the development of technology to optimize the use of broadcast TV spectrum and the distribution of video content over its LPTV broadcast distribution platform (subsections (i)-(iii) referred to collectively herein as the "Business of the Company").

46.     Concurrently with the Kyle Non-Compete Agreement, Kyle Consulting Agreement, and Kyle Stock Award Agreement, the Bruni Defendants entered into the substantially identical Bruni Non-Compete Agreement, and Bella Spectra entered into the substantially identical Bruni Stock Award Agreement and the substantially similar Bruni Consulting Agreement.

47.     The Bruni Consulting Agreement provided that DTV would pay Bella Spectra $4,166.67 twice per month for a period of up to two years, totaling $200,000.16.

48.     Defendants have repeatedly breached their obligations under the Consulting Agreements and Non-Compete Agreements.

49.     In addition, actions taken by Defendants before the Agreements were executed demonstrate that Defendants did not intend to honor their obligations under the Consulting Agreements and Non-Compete Agreements, and instead intended to defraud Plaintiffs for Defendants' own personal gain.

50.     During the negotiations that led to the execution of the Agreements, Defendants secretly and repeatedly took actions to enrich themselves or their affiliates at the expense of the assets being purchased by Plaintiffs pursuant to the APA.  For example and without limitation:

a.      Prior to the execution of the Agreements, Defendants failed to pay key vendors amounts exceeding $1 million notwithstanding vendor warnings of default and

restocking fees, reducing the value of the assets Plaintiffs purchased pursuant to the APA by delaying payments until the assets were under Plaintiffs' control.

b. Similarly, Defendants failed to make several months' worth of payments on capital leases in connection with the assets Plaintiffs purchased pursuant to the APA. Defendants' delinquency resulted in litigation being threatened against DTV and required a bridge loan to ensure the outstanding balance was paid.

c. Defendants also failed to pay tower leases, utility bills, and network bills as they came due in the time leading up to the change of control of the assets Plaintiffs purchased pursuant to the APA.

d. At the same time as Defendants were deliberately failing to pay bills, apparently as part of a scheme to saddle Plaintiffs with those expenses, default fees, and litigation expenses, Defendants used cash from the assets Plaintiffs purchased pursuant to the APA to enrich themselves and their allies, including causing vast sums of cash to be paid to prior board members and allies of Defendants in the lead-up to the execution of the APA and subsequently transferring cash from assets purchased by Plaintiffs to third parties.

51. Defendants' misconduct continued after they executed the Agreements, including, for example and without limitation, Kyle causing DTV to pay utility bills for King Forward and using DTV's law firm to prepare Kyle's own personal taxes.

52. On information and belief, Defendants failed to discharge their obligations diligently under the Consulting Agreements.

53. Kyle, King Forward, and the Bruni Defendants identified numerous purported "strategic" opportunities pursuant to their duties under the Consulting Agreements which were self-interested or impracticable transactions brought for improper purposes to direct money to

Defendants' allies and associates at substantial disadvantage to the Plaintiffs. For example and without limitation, Kyle attempted to persuade Plaintiffs to acquire assets at inflated prices from sellers that, upon investigation, turned out to be friends or associates of Defendants.

54.     Kyle also interfered with Plaintiffs' business, in breach of his obligations under the Consulting Agreement, by attempting to promote initiatives clearly prohibited by FCC rules and guidelines.

55.     On information and belief, Defendants willfully and deliberately concealed, encrypted, and/or destroyed financial records of assets that Plaintiffs purchased pursuant to the APA, making it impossible for Plaintiffs to completely calculate and identify the full extent of Defendants' misconduct prior to fact discovery in this action.

56.     On information and belief, Kyle, King Forward, and the Bruni Defendants' breaches of their respective Non-Compete Agreements and Consulting Agreements began contemporaneously with the execution of those agreements in November 2017. Among other things, Kyle's actions in causing DTV to pay utility expenses for King Forward violated the Kyle Consulting Agreement and the Kyle Non-Compete Agreement, and, especially coupled with Defendants' spoliation of financial data, suggests that Defendants were engaged in additional activity in competition with, and to the detriment of, Plaintiffs that has not yet come to light.

57.     Defendants' breaches of the Non-Compete Agreements became more brazen in November 2019, as Defendants embarked on a campaign of actions to compete directly and/or indirectly with Plaintiffs notwithstanding the fact that Kyle, King Forward, and the Bruni Defendants had expressly agreed to contemporaneous Non-Compete Agreements that had longer, four-year terms and contemporaneous Stock Award Agreements that would (but for

Defendants' breaches) continue to compensate them in the form of vested restricted stock units through the entire four-year terms of the Non-Compete Agreements.

58.     Defendants breached the Non-Compete Agreements by procuring approval from the FCC in November 2019 for a permit allowing construction of a new television station, K24OD-D, broadcasting in the vicinity of Carteret County, North Carolina (the "K24OD-D Construction Permit").

59.     Defendants' acquisition of the K24OD-D Construction Permit occurred less than three years into the Non-Compete Agreements' four-year terms and clearly fell within the Non-Compete Agreements' definition of the Business of the Company.

60.     Defendants' acquisition of the K24OD-D Construction Permit breached the Non-Compete Agreements by competing directly with Plaintiffs in a particular geographic market in which Plaintiffs are already engaged in the Business of the Company as defined in the Non-Compete Agreement. A map depicting the substantial geographic overlap between the broadcast contour of Defendants' K24OD-D Construction Permit and the broadcast contour of an existing permit held by Plaintiffs allowing the construction of a new television station with the call sign WFEJ-LD, is attached hereto as Exhibit 6. As Exhibit 6 demonstrates, the broadcast contour of Defendants' K24OD-D Construction Permit (depicted in red) is almost entirely within the broadcast contour of Plaintiffs' construction permit for WFEJ-LD (depicted in black).

61.     Kyle also breached the Kyle Non-Compete Agreement by filing with the Florida Department of State's Division of Corporations to reinstate DTV I as an active corporate entity, listing Kyle as both manager and registered agent of DTV I, on January 16, 2020. On or around that same date, Kyle filed Articles of Amendment to DTV I's Articles of Organization, changing DTV I's name to King Spectrum.

62.     Kyle's reinstatement of King Spectrum, which occurred less than three years into the Kyle Non-Compete Agreement's four-year term, falls within the Kyle Non-Compete Agreement's definition of the Business of the Company because, prior to ceasing operations in 2016, DTV I was engaged in the business of owning and acquiring low power television broadcast licenses and construction permits, and/or owning and operating low power television stations.

63.     Kyle's reinstatement of King Spectrum breaches the Kyle Non-Compete Agreement by competing directly with Plaintiffs in the Business of the Company as defined in the Kyle Non-Compete Agreement.

64.     Defendants further breached the Non-Compete Agreements by causing King Forward to file with the FCC in late January 2020 amendments to several applications for construction permits relating to television stations with the following facility identification numbers in the following geographic markets (collectively, the "King Forward Applications"):

    a.      Facility ID:182289 (Gainesville, FL);

    b.      Facility ID:182294 (Gainesville, FL);

    c.      Facility ID:182301 (Gainesville, FL);

    d.      Facility ID:182322 (Ocala, FL);

    e.      Facility ID:182358 (Tallahassee, FL);

    f.      Facility ID:182367 (Tallahassee, FL);

    g.      Facility ID:182370 (Tallahassee, FL);

    h.      Facility ID:182667 (Bowling Green, KY);

    i.      Facility ID:182912 (Montgomery, AL);

    j.      Facility ID:182914 (Montgomery, AL);

      k.      Facility ID:182923 (Albany, GA);

      l.      Facility ID:182927 (Valdosta, GA); and

      m.      Facility ID:182928 (Valdosta, GA).

65.     Defendants further breached the Non-Compete Agreements by causing King Spectrum, after its reinstatement, to file with the FCC on January 30, 2020 amendments to several applications for construction permits relating to television stations with the following facility identification numbers in the following geographic markets (collectively, the "King Spectrum Applications"):

      a.      Facility ID:181941 (Evansville, IN);

      b.      Facility ID:181944 (Evansville, IN);

      c.      Facility ID:181947 (Evansville, IN);

      d.      Facility ID:182067 (Santa Barbara, CA);

      e.      Facility ID:182277 (Sebastian, FL);

      f.      Facility ID:182349 (Athens, GA); and

      g.      Facility ID:182356 (Athens, GA).

66.     Defendants further breached the Non-Compete Agreements by causing Tiger Eye to file with the FCC on January 30, 2020 amendments to two applications for construction permits relating to television stations with facility identification numbers 181937 and 181948 in the Evansville, Indiana market (the "Tiger Eye Applications" and, collectively with the King Forward Applications and the King Spectrum Applications, the "Amended Applications").

67.     Defendants further breached the Non-Compete Agreements by procuring from the FCC, as recently as yesterday, approval of several of the applications listed above, granting

permits allowing the construction of the following new television stations (collectively, the "2020 Construction Permits"):

      a.     Call sign W19EW-D (Evansville, IN), granting King Spectrum's application for Facility ID 181944;

      b.     Call sign W06DG-D (Evansville, IN), granting King Spectrum's application for Facility ID 181947;

      c.     Call sign W15EO-D (Sebastian, FL), granting King Spectrum's application for Facility ID 182277;

      d.     Call sign W28EZ-D (Gainesville, FL), granting King Forward's application for Facility ID 182289;

      e.     Call sign W18FA-D (Gainesville, FL), granting King Forward's application for Facility ID 182294;

      f.     Call sign W19EX-D (Gainesville, FL), granting King Forward's application for Facility ID 182301;

      g.     Call sign W17EK-D (Ocala, FL), granting King Forward's application for Facility ID 182322;

      h.     Call sign W04DX-D (Tallahassee, FL), granting King Forward's application for Facility ID 182358;

      i.     Call sign W13DT-D (Montgomery, AL), granting King Forward's application for Facility ID 182912; and

      j.     Call sign W26FJ-D (Valdosta, GA), granting King Forward's application for Facility ID 182927.

68.     Defendants' filing of the Amended Applications and procurement of the 2020 Construction Permits occurred less than three years into the Non-Compete Agreements' four-year terms and clearly fell within the Non-Compete Agreements' definition of the Business of the Company.

69.     Defendants' actions with respect to the Amended Applications and 2020 Construction Permits breach the Non-Compete Agreements by competing directly with Plaintiffs in geographic Designated Market Areas ("DMAs") in which Plaintiffs are already engaged in the Business of the Company as defined in the Non-Compete Agreements. Maps depicting the substantial geographic overlaps between the broadcast contours of Plaintiffs' existing holdings in the relevant DMAs in Florida, Georgia, California, Indiana, Kentucky, and Alabama (depicted in black) and the broadcast contours of Defendants' 2020 Construction Permits and the Amended Applications (depicted in red) are attached hereto as Exhibits 7–15:

a.     Exhibit 7 depicts the overlaps between the broadcast contours of King Forward's construction permits and Plaintiffs' existing holdings in the vicinities of Gainesville, Florida and Ocala, Florida.

b.     Exhibit 8 depicts the overlaps between the broadcast contours of King Forward's construction permits and still-pending applications and Plaintiffs' existing holdings in the vicinity of Montgomery, Alabama.

c.     Exhibit 9 depicts the overlaps between the broadcast contours of King Spectrum's construction permits, King Spectrum and Tiger Eye's still-pending applications, and Plaintiffs' existing holdings in the vicinity of Evansville, Indiana.

      d.    Exhibit 10 depicts the overlap between the broadcast contours of King Spectrum's construction permit and Plaintiffs' existing holdings in the vicinity of Sebastian, Florida.

      e.    Exhibit 11 depicts the overlap between the broadcast contours of King Forward's construction permit and still-pending applications and Plaintiffs' existing holdings in the vicinity of Tallahassee, Florida.

      f.    Exhibit 12 depicts the overlap between the broadcast contours of King Forward's still-pending application and Plaintiffs' existing holdings in the vicinity of Bowling Green, Kentucky.

      g.    Exhibit 13 depicts the overlap between the broadcast contours of King Forward's still-pending application and Plaintiffs' existing holdings in the vicinity of Albany, Georgia.

      h.    Exhibit 14 depicts the overlap between the broadcast contours of King Spectrum's still-pending application and Plaintiffs' existing holdings in the vicinity of Santa Barbara, California.

      i.    Exhibit 15 depicts the overlap between the broadcast contours of King Spectrum's still-pending applications and Plaintiffs' existing holdings in the vicinity of Athens, Georgia.

70.    Kyle, King Forward, and the Bruni Defendants acknowledged in the Non-Compete Agreements that DTV is engaged in the business of operating and building a wireless distribution platform covering select DMAs, including by acquiring low power television broadcast licenses and construction permits and launching new low power television stations in the United States using such broadcast licenses and construction permits.

71.     Defendants' intimate knowledge of the U.S. broadcast television business based on their prior ownership and operation of the television stations, licenses, construction permits, and applications acquired by Plaintiffs, combined with the Confidential Information that Kyle, King Forward, and the Bruni Defendants gained during their service as exclusive consultants to Plaintiffs, position Defendants to damage Plaintiffs' business imminently and irreparably by competing directly with Plaintiffs in the Business of the Company, as defined in the Non-Compete Agreements, in DMAs in which Plaintiffs are already operating.

## COUNT I (DECLARATORY JUDGMENT) (¶¶ 72–77)
## AGAINST KYLE DEFENDANTS AND TIGER EYE LICENSING

72.     Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

73.     Pursuant to 28 U.S.C. Section 2201, Rule 57 of the Federal Rules of Civil Procedure, and Florida Statutes Section 86.021, Plaintiffs respectfully demand confirmation and findings of the validity of the Kyle Non-Compete Agreement and seek to obtain a declaration of their rights against Defendants thereunder, both as a result of Defendants' alleged breaches thereof and by way of anticipation with respect to any acts not yet done by Defendants in breach thereof, specifically for this Court to determine the date the tolling of the non-competition provisions began, and to interpret the effect of Defendants' multiple breaches alleged herein on the tolling period.

74.     Pursuant to Florida Statutes Section 86.091, Defendants Kyle, King Forward, King Spectrum, Tiger Eye, and Tiger Eye Licensing are all proper parties to this claim for declaratory judgment because, on information and belief, each of them has an interest which would be affected by the declaratory judgment that Plaintiffs seek.

75.     The Kyle Non-Compete Agreement is a valid restraint of trade or commerce under Florida Statutes Section 542.335.

76.     The Kyle Non-Compete Agreement is a valid written contract signed by Kyle on behalf of himself, King Forward, and their respective successors and assigns.

77.     The restrictions in the Kyle Non-Compete Agreement are reasonable in time, area, and line of business and are supported by adequate consideration and justified by Plaintiffs' legitimate business interests, including without limitation protecting Plaintiffs' confidential business information and protecting Plaintiffs' customer goodwill.

## COUNT II (INJUNCTIVE RELIEF) (¶¶ 78–90)
## AGAINST KYLE DEFENDANTS AND TIGER EYE LICENSING

78.     Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

79.     Plaintiffs respectfully request, pursuant to Rule 65 of the Federal Rules of Civil Procedure, that this Court issue the preliminary and permanent injunctions set forth in Plaintiffs' Prayer for Relief below.

80.     The allegations in this Complaint fulfill each of the prerequisites for the preliminary injunction that Plaintiffs seek.

81.     Defendants' actions caused—and will, if not enjoined, continue to cause—immediate and irreparable harm to Plaintiffs' business.

82.     Unless Defendants and any affiliated individuals and entities in active concert or participation with them are enjoined against further violation of the Kyle Non-Compete Agreement, Plaintiffs will continue to suffer irreparable injury and harm in the form of, without limitation and for example:

a.      Use and disclosure of Plaintiffs' Confidential Information by Defendants and their affiliates to compete, unfairly and directly, with Plaintiffs in DMAs in which Plaintiffs are already operating or intend to launch operations pursuant to their plans to launch dozens of new television stations across the United States;

b.      Present economic loss, which is unascertainable at this time, and future economic loss, which is incalculable at this time; and

c.      Loss of customer goodwill, damage to customer relationships, loss of market position and reputation, both in the DMAs in which Plaintiffs currently operate and in the broadcast television industry generally, and damage to the competitive advantage that Plaintiffs sought to gain through the transactions and consulting services Plaintiffs procured with the APA, the Consulting Agreements, and the Non-Compete Agreements.

83.     Pursuant to Florida Statutes Section 542.335(j), "[t]he violation of an enforceable restrictive covenant creates a presumption of irreparable injury to the person seeking enforcement of a restrictive covenant."

84.     Moreover, in the Kyle Non-Compete Agreement, Kyle and King Forward expressly agreed:

> Accordingly, each of the Restricted Parties agrees that if such Restricted Party breaches or threatens to breach any of the promises contained in this Agreement, [Plaintiff] shall, in addition to all other remedies it may have (including monetary remedies), be entitled to seek injunction and/or equitable relief, on a temporary or permanent basis, to restrain any such breach or threatened breach without showing or proving any actual damage to [Plaintiff].

85.     The balance of equities weighs in favor of Plaintiffs because the injuries and threatened injuries to Plaintiffs alleged herein outweigh any harm that the injunctive relief Plaintiffs seek would pose to Defendants.

86.     Plaintiffs currently have no adequate remedy at law for the irreparable injuries alleged herein as it relates to the injunctive relief sought.

87.     Public interest supports enforcement of contracts such as the Kyle Non-Compete Agreement, which is not overly broad, overly long, or otherwise unreasonable, according to their express terms.

88.     Facts alleged in this Complaint demonstrate Plaintiffs have a substantial likelihood of prevailing on the merits of this cause of action at trial.

89.     In light of the foregoing, including in particular Kyle and King Forward's express acknowledgment in the Kyle Non-Compete Agreement of Plaintiffs' entitlement to injunctive relief, Plaintiffs respectfully request that this Court waive Plaintiffs' obligation under Rule 65(c) to post a bond or, in the alternative, require Plaintiffs to post a bond in only a nominal amount.

90.     Pursuant to Florida Statutes Section 86.081, Plaintiffs respectfully request that the Court award Plaintiffs their attorneys' fees and costs for this action, and further request a hearing at the earliest possible time.

**COUNT III (FRAUD IN THE INDUCEMENT) (¶¶ 91–103)**
**AGAINST ALL DEFENDANTS**

91.     Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

92.     Defendants knowingly and voluntarily entered into the Agreements.

93.     In negotiating the Agreements, Defendants misrepresented their then-present intention to continue engaging in competitive and other activities to Plaintiffs' detriment both in advance of and after execution of the Agreements, and within the four-year terms of the Non-Compete Agreements.

94.     On information and belief, in negotiating the Agreements, Defendants misrepresented the status of certain then-pending construction permit applications and their then-present intentions with respect to such applications.

95.     Specifically, on information and belief, Defendants misrepresented their ownership, control, and/or ability to sell or procure the authority to sell certain then-pending construction permit applications, including without limitation the King Forward Applications, the King Spectrum Applications, and the Tiger Eye Applications, in connection with the transaction embodied in the Agreements in order to induce Plaintiffs to agree to exclude such applications from acquisition pursuant to the APA.

96.     On information and belief, the Kyle Defendants conspired and worked in concert with Tiger Eye Licensing and the Bruni Defendants in making the foregoing misrepresentations to Plaintiffs and concealing their true intentions to (i) gain valuable confidential information about Plaintiffs through the Consulting Agreements and Non-Compete Agreements and (ii) use the permit applications that they fraudulently induced Plaintiffs not to acquire, including without limitation the King Forward Applications, the King Spectrum Applications, and the Tiger Eye Applications, for the purpose of directly and/or indirectly competing with Plaintiffs during the terms of the Non-Compete Agreements.

97.     On information and belief, Defendants knew that the foregoing representations made to Plaintiffs were false and that Defendants intended, notwithstanding the clear terms of the Non-Compete Agreements, to use the permit applications not acquired by Plaintiffs, including without limitation the King Forward Applications, the King Spectrum Applications, and the Tiger Eye Applications, to compete with Plaintiffs directly and/or indirectly during the terms of the Non-Compete Agreements.

98.     Defendants also intended to continue funding the expenses of King Forward, which is now competing against Plaintiffs in breach of the Kyle Non-Compete Agreement, at Plaintiffs' expense, as demonstrated by the fact that Kyle continued to cause DTV to fund such expenses after the Agreements were executed.

99.     On information and belief, Defendants knew that the Non-Compete Agreements were material terms of the APA, and integral to their respective Consulting Agreements and Stock Award Agreements, and that Plaintiffs would not have entered into the Agreements had they been aware of the truth regarding the permit applications excluded from acquisition pursuant to the Agreements and Defendants' true intentions with respect to those permit applications and the confidential information gained pursuant to the Consulting Agreements.

100.    On information and belief, Defendants intentionally deceived Plaintiffs to enter into the respective Non-Compete Agreements and Consulting Agreements for the expressly prohibited purpose of acquiring confidential information to compete directly and/or indirectly with Plaintiffs.

101.    Defendants' efforts to conceal, encrypt, and/or destroy historical data concerning their business activities, including financial records of assets that Plaintiffs purchased pursuant to the APA, demonstrate that Defendants acted with deliberate intent to conceal material information from Plaintiffs in connection with the transaction embodied in the Agreements.

102.    The misrepresentations alleged herein injured Plaintiffs because Plaintiffs reasonably relied upon these misrepresentations. Had Plaintiffs known these representations were false, Plaintiffs would not have entered into the Consulting Agreements, compensated King Forward or Bella Spectra pursuant to the Consulting Agreements or Stock Award Agreements, or shared confidential information with Kyle, King Forward, or the Bruni Defendants.

103.    Plaintiffs suffered and continue to suffer substantial damages as a result of their reasonable reliance on Defendants' multiple false representations, including without limitation and for example:

a.    Defendants' unfair competitive advantage arising from confidential information shared by Plaintiffs;

b.    Monies paid to King Forward and Bella Spectra under the Consulting Agreements;

c.    Grossly inaccurate valuation of the assets acquired pursuant to the APA, resulting in substantial overpayment for those assets;

d.    Loss of customer goodwill;

e.    Loss of profits;

f.    Loss of revenue; and

g.    Loss of market share.

### COUNT IV (BAD FAITH) (¶¶ 104–08) AGAINST ALL DEFENDANTS

104.    Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

105.    Pursuant to Florida Statutes Section 671.203, Defendants Kyle and King Forward failed to negotiate in good faith when contemplating, executing, and failing to perform under the Kyle Non-Compete Agreement.

106.    On information and belief, Defendants conspired and worked in concert with one another when they entered into the Agreements with the intentions to:

a.    Induce HC2 to enter into the APA;

b.    Induce DTV to enter into the Consulting Agreements;

c.   Obtain confidential information about Plaintiffs' business; and

d.   Use the confidential information received pursuant to the Consulting Agreements to compete directly and/or indirectly with Plaintiffs during the terms of the Non-Compete Agreements.

107.   On information and belief, Defendants conspired and worked in concert with one another to induce DTV to enter into the Non-Compete Agreements while intending to violate the Non-Compete Agreements, failing to demonstrate good faith in the performance of the Non-Compete Agreements.

108.   Plaintiffs are entitled to recover damages from Defendants for bad faith negotiations, including without limitation all profits lost due to Defendants' actions alleged herein and other losses, expenditures, and costs incurred by Plaintiffs as a result of those actions.

### COUNT V (UNJUST ENRICHMENT) (¶¶ 109–12)<br>AGAINST KING FORWARD AND BELLA SPECTRA

109.   Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

110.   Plaintiffs bring this count against Defendants King Forward and Bella Spectra pursuant to the common law prohibition against unjust enrichment.

111.   As a result of the conduct described herein, Plaintiffs paid King Forward and Bella Spectra funds to which they were not entitled under the Consulting Agreements and Stock Award Agreements.

112.   In equity and good conscience, Defendants King Forward and Bella Spectra should not be permitted to retain monies and stock awards wrongfully received from Plaintiffs.

## COUNT VI (UNJUST ENRICHMENT) (¶¶ 113–16)
## AGAINST ALL DEFENDANTS

113.    Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

114.    Plaintiffs bring this count against all Defendants pursuant to the common law prohibition against unjust enrichment.

115.    As a result of the conduct described herein, Plaintiffs paid for assets under the APA in substantial excess of what such assets were worth and Defendants were entitled to.

116.    In equity and good conscience, Defendants should not be permitted to retain monies wrongfully received from Plaintiffs.

## COUNT VII (BREACH OF KYLE NON-COMPETE AGREEMENT) (¶¶ 117–20)
## AGAINST KYLE AND KING FORWARD

117.    Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

118.    Defendants Kyle and King Forward knowingly and voluntarily entered into the Kyle Non-Compete Agreement.

119.    Kyle and King Forward's actions described in this Complaint violated the reasonable restrictions of the Kyle Non-Compete Agreement and injured Plaintiffs.

120.    To the extent Defendants' actions are not enjoined, Plaintiffs are entitled to recover damages from Kyle and King Forward for their breaches of the Kyle Non-Compete Agreement in an amount to be proven at trial, including without limitation all profits lost due to Defendants' actions and other losses, expenditures, and costs incurred by Plaintiffs as a result of those actions.

**COUNT VIII (BREACH OF BRUNI NON-COMPETE AGREEMENT) (¶¶ 121–24)**
**AGAINST BRUNI DEFENDANTS**

121.    Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

122.    Defendants Bruni and Bella Spectra knowingly and voluntarily entered into the Bruni Non-Compete Agreement.

123.    Bruni and Bella Spectra's actions described in this Complaint violated the reasonable restrictions of the Bruni Non-Compete Agreement and injured Plaintiffs.

124.    To the extent Defendants' actions are not enjoined, Plaintiffs are entitled to recover damages from the Bruni Defendants for their breaches of the Bruni Non-Compete Agreement in an amount to be proven at trial, including without limitation all profits lost due to Defendants' actions and other losses, expenditures, and costs incurred by Plaintiffs as a result of those actions.

**COUNT IX (BREACH OF KYLE CONSULTING AGREEMENT) (¶¶ 125–28)**
**AGAINST KYLE AND KING FORWARD**

125.    Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

126.    Defendants Kyle and King Forward knowingly and voluntarily entered into the Kyle Consulting Agreement.

127.    Kyle and King Forward's actions described in this Complaint violated their obligations to Plaintiffs under the Kyle Consulting Agreement and injured Plaintiffs.

128.    Plaintiffs are entitled to recover damages from Defendants for their breaches of the Kyle Consulting Agreement in an amount to be proven at trial, including without limitation

all payments made under the Kyle Consulting Agreement, profits lost due to Defendants' actions and other losses, expenditures, and costs incurred by Plaintiffs as a result of those actions.

### COUNT X (BREACH OF BRUNI CONSULTING AGREEMENT) (¶¶ 129–32) AGAINST BRUNI DEFENDANTS

129.    Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

130.    The Bruni Defendants knowingly and voluntarily entered into the Bruni Consulting Agreement.

131.    The Bruni Defendants' actions described in this Complaint violated their obligations to Plaintiffs under the Bruni Consulting Agreement and injured Plaintiffs.

132.    Plaintiffs are entitled to recover damages from Defendants for their breaches of the Bruni Consulting Agreement in an amount to be proven at trial, including without limitation all payments made under the Bruni Consulting Agreement, profits lost due to Defendants' actions and other losses, expenditures, and costs incurred by Plaintiffs as a result of those actions.

### COUNT XI (DECLARATORY JUDGMENT) (¶¶ 133–38) AGAINST BRUNI DEFENDANTS

133.    Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

134.    Pursuant to 28 U.S.C. Section 2201, Rule 57 of the Federal Rules of Civil Procedure, and Florida Statutes Section 86.021, Plaintiffs demand confirmation and findings of the validity of the Bruni Non-Compete Agreement and seek to obtain a declaration of their rights against the Bruni Defendants thereunder, both as a result of the conduct alleged herein and by way of anticipation with respect to any acts not yet done by the Bruni Defendants in breach

thereof, specifically for this Court to determine the date the tolling of the non-competition provisions would begin and to interpret the effect of Defendants' multiple breaches alleged herein on the tolling period.

135.    Pursuant to Florida Statutes Sections 86.031 and 86.051, Plaintiffs may obtain this declaratory judgment before there has been any alleged breach of the Bruni Non-Compete Agreement, by way of anticipation with respect to any act not yet done, including any act done in active concert or participation with any of the Kyle Defendants or Tiger Eye Licensing.

136.    As alleged above on information and belief, Bruni is married to Kyle, and on information and belief, the Bruni Defendants have in the past conspired and acted in active concert or participation with the Kyle Defendants and Tiger Eye Licensing.

137.    The Bruni Non-Compete Agreement is a valid written contract signed by Bruni on behalf of herself, Bella Spectra, and their respective successors and assigns.

138.    The Bruni Non-Compete Agreement is substantially identical to the Kyle Non-Compete Agreement and, thus, for all of the same reasons stated above with respect to the Kyle Non-Compete Agreement, is a valid restraint of trade or commerce under Florida Statutes Section 542.335.

**COUNT XII (INJUNCTIVE RELIEF) (¶¶ 139–44)**
**AGAINST BRUNI DEFENDANTS**

139.    Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

140.    The allegations in this Complaint fulfill each of the prerequisites for the preliminary injunction that Plaintiffs seek.

141.    Plaintiffs respectfully request, pursuant to Rule 65 of the Federal Rules of Civil Procedure, that this Court issue the preliminary and permanent injunctions set forth in Plaintiffs' Prayer for Relief below.

142.    On the basis of Plaintiffs' requests above for preliminary and permanent injunctive relief and declaratory judgment, as well as DTV's rights under the Bruni Non-Compete Agreement, Plaintiffs further request, pursuant to Rule 65, that this Court include and bind the Bruni Defendants in the preliminary and permanent injunctions set forth in Plaintiffs' Prayer for Belief below.

143.    In light of the foregoing, including in particular Bruni and Bella Spectra's express acknowledgment in the Bruni Non-Compete Agreement of Plaintiffs' entitlement to injunctive relief, Plaintiffs respectfully request that this Court waive Plaintiffs' obligation to post a bond pursuant to Rule 65(c) or, in the alternative, require Plaintiffs to post a bond in only a nominal amount.

144.    Pursuant to Florida Statutes Section 86.081, Plaintiffs respectfully request that the Court award Plaintiffs their attorneys' fees and costs and monetary damages for this action.

### COUNT XIII (INJUNCTIVE RELIEF) (¶¶ 145–49)
### AGAINST ALL DEFENDANTS

145.    Plaintiffs repeat and reallege each and every allegation contained above as if fully set forth herein.

146.    The allegations in this Complaint fulfill each of the prerequisites for the additional injunctive relief that Plaintiffs seek in this count.

147.    In light of the fact that Defendants willfully and deliberately concealed, encrypted, and/or destroyed financial records of assets that Plaintiffs purchased pursuant to the APA, Plaintiffs respectfully request, pursuant to Rule 65 of the Federal Rules of Civil Procedure,

that this Court issue the additional injunction set forth in Plaintiffs' Prayer for Relief below, ordering all Defendants to immediately preserve a forensically sound copy of, and refrain from deleting, any data from any source, whether personal or company-owned, which was in use and/or existence from June 2016 through the present.

148.    In light of the foregoing, including in particular Kyle, King Spectrum, and the Bruni Defendants' respective express acknowledgments in the Non-Compete Agreements of Plaintiffs' entitlement to injunctive relief, Plaintiffs respectfully request that this Court waive Plaintiffs' obligation to post a bond pursuant to Rule 65(c) or, in the alternative, require Plaintiffs to post a bond in only a nominal amount.

149.    Pursuant to Florida Statutes Section 86.081, Plaintiffs respectfully request that the Court award Plaintiffs their attorneys' fees and costs and monetary damages for this action.

## PRAYER FOR RELIEF AND DEMAND FOR JURY TRIAL

**WHEREFORE**, Plaintiffs individually and collectively pray for relief and judgments, damages, injunctive relief, and declaratory relief against all Defendants, individually and collectively as alleged herein, as follows:

A.      Entry of an order temporarily enjoining John N. Kyle II and King Forward, Inc., individually or in concert with others, from violating the Kyle Non-Compete Agreement, including without limitation taking, or causing any other person or entity, including without limitation King Spectrum, L.L.C. f/k/a DTV America I, LLC, Tiger Eye Broadcasting Corporation d/b/a King Spectrum, L.L.C., Tiger Eye Licensing, L.L.C., Kristina C. Bruni, and Bella Spectra Corporation, to take, any of the following actions:

- Selling, assigning, conveying, transferring, or otherwise disposing of construction permits relating to call signs K24OD-D, W19EW-D, W06DG-D, W15EO-D, W28EZ-D, W18FA-D, W19EX-D, W17EK-D, W13DT-D, W04DX-D, or W26FJ-D, or any interest in any of those construction permits or the applications for them, except to HC2 Broadcasting Inc. or an affiliate of HC2 Broadcasting Inc. as designated in writing by HC2 Broadcasting Inc.;

- Taking any action, or causing any other person or entity to take any action, to commence construction pursuant to construction permits relating to call signs K24OD-D, W19EW-D, W06DG-D, W15EO-D, W28EZ-D, W18FA-D, W19EX-D, W17EK-D, W13DT-D, W04DX-D, or W26FJ-D, except as may be separately authorized in writing by HC2 Broadcasting Inc.;

- Selling, assigning, conveying, transferring, or otherwise disposing of the currently pending applications to the FCC for construction permits in connection with Facility IDs 182367 (Tallahassee, FL), 182370 (Tallahassee, FL), 182667 (Bowling Green, KY), 182914 (Montgomery, AL), 182923 (Albany, GA), 182928 (Valdosta, GA), 181941 (Evansville, IN), 182067 (Santa Barbara, CA), 182349 (Athens, GA), 182356 (Athens, GA), 181937 (Evansville, IN), and 181948 (Evansville, IN), or any interest in any of those applications, except to HC2 Broadcasting Inc. or an affiliate of HC2 Broadcasting Inc. as designated in writing by HC2 Broadcasting Inc.;

- Taking any action, or causing any other person or entity to take any action, with respect to the currently pending applications to the FCC for construction permits in connection with Facility IDs 182367 (Tallahassee, FL), 182370 (Tallahassee, FL), 182667 (Bowling Green, KY), 182914 (Montgomery, AL), 182923 (Albany, GA), 182928 (Valdosta, GA), 181941 (Evansville, IN), 182067 (Santa Barbara, CA), 182349 (Athens, GA), 182356 (Athens, GA), 181937 (Evansville, IN), and 181948 (Evansville, IN);

- Taking any action, or causing any other person or entity to take any action, to commence construction pursuant to any construction permits that may be granted by the FCC in connection with the currently pending applications to the FCC for construction permits in connection with Facility IDs 182367 (Tallahassee, FL), 182370 (Tallahassee, FL), 182667 (Bowling Green, KY), 182914 (Montgomery, AL), 182923 (Albany, GA), 182928 (Valdosta, GA), 181941 (Evansville, IN), 182067 (Santa Barbara, CA), 182349 (Athens, GA), 182356 (Athens, GA), 181937 (Evansville, IN), and 181948 (Evansville, IN), except as may be separately authorized in writing by HC2 Broadcasting Inc.;

- Taking any action, or causing or assisting any other person or entity to take any action, prior to November 9, 2021 to (i) engage in the business of owning and acquiring low power television broadcast licenses and construction permits across the United States, (ii) own, operate, or launch a low power television station, or (iii) develop technology to optimize the

use of broadcast TV spectrum and the distribution of video content over a low power television broadcast distribution platform.

B.   Entry of an order permanently enjoining John N. Kyle II and King Forward, Inc. from further violating their Non-Compete Agreement, including without limitation taking, or causing any other person or entity, including without limitation King Spectrum, L.L.C. f/k/a DTV America I, LLC, Tiger Eye Broadcasting Corporation d/b/a King Spectrum, L.L.C., Tiger Eye Licensing, L.L.C., Kristina C. Bruni, and Bella Spectra Corporation, to take, any of the following actions:

- Selling, assigning, conveying, transferring, or otherwise disposing of construction permits relating to call signs K24OD-D, W19EW-D, W06DG-D, W15EO-D, W28EZ-D, W18FA-D, W19EX-D, W17EK-D, W13DT-D, W04DX-D, or W26FJ-D, or any interest in any of those construction permits or the applications for them, except to HC2 Broadcasting Inc. or an affiliate of HC2 Broadcasting Inc. as designated in writing by HC2 Broadcasting Inc.;

- Taking any action, or causing any other person or entity to take any action, to commence construction pursuant to construction permits relating to call signs K24OD-D, W19EW-D, W06DG-D, W15EO-D, W28EZ-D, W18FA-D, W19EX-D, W17EK-D, W13DT-D, W04DX-D, or W26FJ-D, except as may be separately authorized in writing by HC2 Broadcasting Inc.;

- Selling, assigning, conveying, transferring, or otherwise disposing of the currently pending applications to the FCC for construction permits in connection with Facility IDs 182367 (Tallahassee, FL), 182370 (Tallahassee, FL), 182667 (Bowling Green, KY), 182914 (Montgomery, AL), 182923 (Albany, GA), 182928 (Valdosta, GA), 181941 (Evansville, IN), 182067 (Santa Barbara, CA), 182349 (Athens, GA), 182356 (Athens, GA), 181937 (Evansville, IN), and 181948 (Evansville, IN), or any interest in any of those applications, except to HC2 Broadcasting Inc. or an affiliate of HC2 Broadcasting Inc. as designated in writing by HC2 Broadcasting Inc.;

- Taking any action, or causing any other person or entity to take any action, with respect to the currently pending applications to the FCC for construction permits in connection with Facility IDs 182367 (Tallahassee, FL), 182370 (Tallahassee, FL), 182667 (Bowling Green, KY), 182914 (Montgomery, AL), 182923 (Albany, GA), 182928 (Valdosta, GA), 181941 (Evansville, IN), 182067 (Santa Barbara, CA), 182349 (Athens, GA), 182356 (Athens, GA), 181937 (Evansville, IN), and 181948 (Evansville, IN);

- Taking any action, or causing any other person or entity to take any action, to commence construction pursuant to any construction permits that may be granted by the FCC in connection with the currently pending applications to the FCC for construction permits in connection with Facility IDs 182367 (Tallahassee, FL), 182370 (Tallahassee, FL), 182667

(Bowling Green, KY), 182914 (Montgomery, AL), 182923 (Albany, GA), 182928 (Valdosta, GA), 181941 (Evansville, IN), 182067 (Santa Barbara, CA), 182349 (Athens, GA), 182356 (Athens, GA), 181937 (Evansville, IN), and 181948 (Evansville, IN), except as may be separately authorized in writing by HC2 Broadcasting Inc.;

- Taking any action, or causing or assisting any other person or entity to take any action, prior to November 9, 2021 to (i) engage in the business of owning and acquiring low power television broadcast licenses and construction permits across the United States, (ii) own, operate, or launch a low power television station, or (iii) develop technology to optimize the use of broadcast TV spectrum and the distribution of video content over a low power television broadcast distribution platform.

C.      Entry of an order requiring all Defendants to immediately preserve a forensically sound copy of, and refrain from deleting, any data from any source, whether personal or company-owned, which was in use and/or existence from June 2016 until the present.

D.      Awarding Plaintiffs damages in amounts to be proven at trial, including without limitation for all breaches of contract alleged herein, lost profits and other losses, expenditures, and costs incurred by Plaintiffs, monies paid to King Forward and Bella Spectra pursuant to the Consulting Agreements, stock awarded to King Forward and Bella Spectra pursuant to the Stock Award Agreements, overpayment for the assets acquired pursuant to the APA, diminution in the value of the assets and services purchased by Plaintiffs pursuant to the Agreements,

losses of customer goodwill, revenue, and market share, and other present and future economic losses, presently estimated to exceed $1 million and continuing to accrue, as well as consequential damages, punitive damages, and pre- and post-judgment interest;

E.      Awarding Plaintiffs their attorneys' fees and costs in this action pursuant to Florida Statutes Section 86.081, as the prevailing party in this action pursuant to Florida Statutes Section 542.335(k), pursuant to the fee-shifting indemnification provisions in the Consulting Agreements, and as may be appropriate under Florida Statutes Section 57.105; and

F.      Such further relief as the Court deems appropriate.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: May 19, 2020

*/s/ Edward R. Nicklaus*
Edward R. Nicklaus, Esq.
Florida Bar No. 138399
Nicklaus & Associates, P.A.
4651 Ponce De Leon Blvd., Suite 200
Coral Gables, Florida 33146
(305) 460-9888
(305) 460-9889 Facsimile
edwardn@nicklauslaw.com

HUTH REYNOLDS LLP
Karl C. Huth (*pro hac vice* application forthcoming)
New York Bar No. 4338851
Matthew J. Reynolds (*pro hac vice* application forthcoming)
New York Bar No. 4435202
41 Cannon Court
Huntington, NY 11743
(212) 731-9333
(646) 664-1512 (fax)
huth@huthreynolds.com
reynolds@huthreynolds.com

*Counsel for Plaintiffs DTV America Corporation and HC2 Broadcasting Inc.*